(Cuyahoga County Court of Common Pleas.)

### ROSE V. STATE.

1. *"Walter Baker's Breakfast Cocoa" an adullerated preparation.*—Under the act of March 20, 1884, to provide against the adulteration of foods, "Walter Bakers' Breakfast Cocoa," in the preparation of which the manufacturer took the cocoa bean and extracted a considerable portion of the oil therefrom, and put the product thus prepared in packages, for sale, is a violation of the prohibition of this statute, "that an article of food shall be deemed to be adulterated if any valuable or necessary consistent or ingredient has wholly or in part been abstracted from it."

2. *Adulderating by lowering strength or quality of the natural products.*—When a simple article of food is manufactured from a natural product, for convenience of the consumer, the essential and valuable ingredients of the natural product must not be lowered in preparing the same for the consumer.

(Decided November 27, 1895.)

LAMPSON, J.

On the 4th day of June, 1895, an affidavit was made and filed with E. H. Bohm, a justice of the peace in and for the county of Cuyahoga and state of Ohio, in which affidavit it was alleged, that on or about the 12th day of March, 1895, at the county of Cuyahoga, state aforesaid, the plaintiff in error did unlawfully offer and expose for sale a certain package weighing about one-quarter of a pound, under the name of cocoa, as and for pure cocoa, as and for an article of human food, and to be used as human food, from which cocoa there had been extracted about one-third of the natural fat of cocoa, and which fat had been replaced with "sucrose" and starch, thereby injuring and affecting the strength and purity of the article; and, further, that by extracting one-third of the fat aforesaid, there had been taken from said cocoa as an article of human food a valuable and necessary constituent of said cocoa, contrary to the form of the statute in such cases made and provided.

A warrant was issued upon the affidavit, and the defendant arrested; the defendant entered a plea of not guilty to the charge made against him, and on the 15th day of August, 1895, trial was had before the justice and a jury, resulting in a verdict of guilty as charged, and on the 20th day of August, 1895, the defendant was sentenced to pay a fine of $75 and the costs of prosecution, and stand committed until fine and costs were paid; and the petition in error is filed in this court for the purpose of reviewing and reversing this judgment of the justice of the peace by reason of various errors which are claimed to have entered into the record of said case.

While a large amount of testimony was taken in the case, and a number of exceptions entered both to the admission and exclusion of evidence, and to other matters that took place during the trial of the case, counsel have argued and presented the case to this court solely upon one question —counsel for the plaintiff in error and the defendant in error both saying that their object was to waive all technical and minor questions which might be raised, for the purpose of getting a decision upon what they consider the main question arising in this case. And this question, therefore, will be the only one considered by the court, and which is, as claimed by the plaintiff in error, that no crime as been committed, as shown by the testimony in the case.

The determination of this question depends upon the construction of clause 3 of subdivision b, section 3, of an act entitled "An act to provide against the adulteration of food and drugs," passed March 20, 1884, and which took effect forty days after the passage of the same.

This act, so far as it relates to the question under consideration, including the clause aforesaid, reads as follows:

Sec. 1　No person shall within this state manufacture for sale, offer for

sale, or sell, any drug or article of food which is adulterated within the meaning of this act.

Sec. 2.    The term food, as used herein, shall include all articles used for food or drink by man, whether simple, mixed or compound.

Sec. 3.    An article shall be deemed to be adulterated within the meaning of this act—

b.    In the case of food, (1) if any substance or substances have been mixed with it so as to lower or depreciate or injuriously affect its quality, strength or purity; (2) if any inferior or cheaper substance or substances have been substituted wholly or in part for it; (3) if any valuable or necessary constituent or ingredient has been wholly or in part abstracted from it.

Now, it is claimed by the plaintiff in error, that the record disclosing all of the testimony in the case, fails to show any violation of this provision and prohibition of the statute. He says that the article complained of in the package described in the affidavit, and which was offered in evidence in the case, was a package of cocoa prepared for consumption as a beverage, and known as "Walter Baker's Breakfast Cocoa;" that it was a preparation of cocoa known to the trade for a great many years, and that while the record shows that a large percentage of the fat or cocoa oil had been extracted from the ground cocoa bean before the article was put in packages for the market, yet that the extracting of that fat or cocoa oil does not come within the prohibition of the statute. On the part of the state, it is claimed, that extracting the oil of cocoa from the ground cocoa bean did constitute a violation of this prohibition of the statute.

Now, the testimony shows briefly, that the substance contained in the package which is the substance of the complaint in this action, was the cocoa bean ground, with 30 to 50 per cent. of the cocoa oil extracted therefrom.

That this product was designed as a food to be used for the making of a beverage or drink.

No substances were mixed with it—at least no substances mixed with it that changed or altered the natural constituency of the article itself.

In other words, the manufacturer took the cocoa bean, ground it up, having extracted a considerable portion of the oil therefrom, put the product thus prepared in the packages, and labeled it "Walter Baker's Breakfast Cocoa," and put it on the market for sale. The state says that was a violation of the prohibition of this clause of the statute "that an article of food shall be deemed to be adulterated if any valuable or necessary constituent or ingredient has been wholly or in part abstracted from it."

It would seem as if the solution of this question was a simple one—that the only inquiry necessary to make (the facts being as stated), would be, is the oil of cocoa a valuable constituent in the preparation made of the cocoa bean for the purposes of being used as an article of food, to-wit, the making of a beverage? Now, if this is all that is necessary to be determined, it is easily determined from the facts in the case. Though there is a little manifestation of the expert on the part of some of the witnesses, perhaps only one—I mean manifestation of the retained expert, for the purposes of making out a defense, yet, in fairness to them, all say that the oil of cocoa is the valuable ingredient in any preparation that can be made of the cocoa bean as an article of food. That, in other words, it gets its value for the purposes of making a drink for human beings from the presence of cocoa oil in the preparation. They further say that the cocoa bean, prepared for the purposes of beverage, or making a beverage, is used

with all of the oil in the product; that then the full strength of the cocoa is obtained; that the reduction of the amount of oil lowers the strength of the substance. Now, it would seem as if this determined the question, unless there is something about the subject-matter of this inquiry which relieves it from the condemnation of the statute.

For this purpose, the plaintiff in error says that this is a preparation well known to the trade, and well known to the trade at the time when this act was passed; that it has a trade name, "Walter Baker's Breakfast Cocoa;" that it is an article of food prepared from a natural product, and that, so long as Walter Baker does not change, or anybody else change the ingredients of his preparation of breakfast cocoa, no violation of this statute has taken place. In other words, the standard is the one fixed by the manufacturer, and as long as the manufacturer has prepared an article which is identified by a name or by a package, and has fixed the standard of ingredients in that article, whether more or less, whether valuable or not, whether necessary or not, no violation of the statute takes place unless these are changed as thus fixed by the manufacturer.

Is that the test? If so, then the statute would not apply to any adulterated article of food known to the trade at the time when the act was passed, and, instead of being an act whose effect would be the punishment of the adulteration of food, it would in its effect protect the existing adulterations then known to the trade.

I take it, applying common knowledge to this subject-matter, that the legislature passed this act because the adulteration of food products was becoming common; that the object of passing the act was to stop that adulteration. Not simply to prevent any changes in the future in the then existing articles, but to cut off and stop the continuance of the manufacture and sale of such adulterated articles from and after the taking effect of this act. If that is so, then they must have contemplated some other or different standard with which to compare the article complained of, than the standard fixed by the manufacturer.

In this case we have, first, the cocoa bean, the natural product, having as its valuable and necessary ingredient for the purposes of food cocoa oil (as the experts say), in varying quantities. We have in the article complained of the bean ground to a powder with 30 to 50 per cent. of this oil extracted from it. We find it established by the testimony that the only effect that the extracting of the oil has, is to lower the strength of the original article. The method of using this article as a human food is in a beverage. It involves, adding to it liquid. The inevitable effect of reducing the quantity of the essential oil is to make it necessary to use more of the article to produce the results which are produced where no oil had been extracted. And, as one of the experts says, the same result can be accomplished by the consumer by increasing the liquid, added to the substance.

It is said, however, that this makes a suitable drink for invalids and children, by reason of the mildness of the beverage prepared from the ground cocoa from which oil has been extracted. If what has already been said does not fully answer this suggestion, that is, that the same results can be accomplished by the consumer, reducing the strength of the beverage, still the same argument could be used for the adulteration of a large number of other articles of food, especially those used in the shape of a beverage.

I think it is quite apparent that the legislature intended, by the provisions of this section, that an article of food shall be deemed to be adulterated if any valuable or necessary constituent or ingredient has been wholly or in part abstracted from it; that when a simple article of food is

manufactured from a natural product, the only process being a simple preparation of the natural product for the convenience of the consumer, then the essential and valuable ingredients of that natural product should not be lowered by the person thus preparing the natural product for use by the consumer. That, to my mind, is a plain, simple, common-sense interpretation of this statute. Any other construction and application of this statute would destroy all beneficial results aimed at by its passage by the legislature, while the construction we have given to this statute, makes it applicable to a large number of simple natural food products, and protects the public from the adulteration of the same by extracting from such food products some of their valuable ingredients.

It is common knowledge that a large number of simple food products are prepared for use by manufacturers and dealers, and this is done to serve the convenience of the consumer and to commend the article to the trade.

Many of these are not mixtures or compounds, but simply the natural food product so prepared as to make it convenient for use by the consumer; or if there is a mixture of any foreign substance, it is only for the purpose of preserving the article, or convenience in handling it, without affecting in any way its value as food. To my mind, it was as clearly the intention of the legislature, in passing this act, to protect the consumer against the adulteration of such food products by lowering the strength or quality of the same as to protect consumers against adulteration of food products which are produced by mixing or compounding various ingredients together.

Coffee is a fair illustration of this class of simple food products, and the illustration of the application of this statute, as construed by this court to it, will answer for all.

The natural product is the coffee berry, and manufacturers prepare the coffee bean for the convenience of the consumer; that is, they roast it, they grind it, and in very many instances they put it up in convenient and attractive packages, under various names and titles, to catch the eye of the consumer and the purchaser.

The process of preparing the coffee berry for the convenience of use by the consumer may be likened unto the process of preparing the cocoa bean for use by the consumer. Both are simple natural products. Both are used for the purposes of making beverage in their natural composition, without the addition of any other ingredients except those which are necessary to add flavor to the same by the person consuming them. Whatever the manufacturer or the dealer does with both natural products, he does as a matter of convenience for the consumer for enabling him conveniently to use the same. The statute steps in and says, in a simple food product, where there is no compound or mixture which is material to create the substance aimed at, the dealer or the manufacturer shall not take from that product any part of its natural valuable constituents, but he must send it to the consumer with the full benefit of the constituents which nature has put into that simple food product. If there are any elements or constituents in it which are deleterious, or injure it as a food product, the statute permits those ingredients to be eliminated; but it prohibits the interference with or withdrawal of any portion of the natural valuable food constituents of the article itself.

Any other construction of that statute, because it is applicable to both, would permit the dealer to lower the natural strength of the coffee by extracting the oil from it, and he could, with an equal show of propriety, say: "I put this up in packages of my own name, marked in a

certain way; everybody knows what it is, and it is peculiarly adapted to use by persons of weak stomach, especially invalids and children;"—and in one case the claim would be as strong and as reasonable as in the other.

But it is said that this construction of the statute would prevent the changing of milk into cream, and of cream into butter, and of milk into cheese, and so on. I think a sufficient answer to that objection is, that the adulteration of milk and the adulteration of cream, the adulteration of butter and the adulteration of cheese, is all provided for in separate sections of the statute. Under this construction of the act, the judgment of the court below is affirmed, and judgment for costs in favor of the defendant in error and against the plaintiff in error.

Wm. T. Clark, for the State.

Goulder, Wing & Holding, for plaintiffs.